## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**RANDALL STEVEN BASCO**                          **CIVIL ACTION**

**VERSUS**                                         **NO.  12-2006**

**JERRY GOODWIN, WARDEN**                          **SECTION "J"(2)**
**DAVID WADE CORR. CENTER**

## <u>REPORT AND RECOMMENDATION</u>

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  <u>See</u> 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the motion to dismiss be **DENIED** and that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    STATE COURT PROCEDURAL BACKGROUND

The petitioner, Randall Steven Basco, is currently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On November 20, 2001, Basco was indicted by a grand jury in Terrebonne Parish and charged with one count of aggravated rape, one count of battery, one count of simple criminal damage to property in excess of $500.00 and unauthorized entry of an inhabited dwelling.[3]  The facts of the case as determined at trial were summarized by the Louisiana First Circuit Court of Appeal as follows:

> On or about October 26, 2001, (during the morning hours), S.L.S., the victim, was approached by the defendant when she arrived home.  Once the victim entered her driveway, the defendant pulled in and parked his unmarked police unit behind the vehicle being driven by the victim.  Several days prior to this encounter, the victim ended the romantic relationship that existed between her and the defendant.  As they stood in the driveway, the defendant told the victim that they had some unresolved issues and that they needed to talk.  The victim was holding her young child (near two years of age) at the moment. The victim, hesitantly, walked through her front door as the defendant held the door open.
>
> According to the victim , immediately upon their entrance of the home, the defendant grabbed her hair, placed a gun against her throat, and led her to the kitchen table.  The victim stated that she continued to hold the child, believing that the defendant would not hurt her while she was doing so. The defendant ultimately insisted that the victim put the child down, and the victim complied. The defendant allowed the victim to change the child's diaper and to give the child something to eat.  The victim further stated that whenever the defendant allowed her to stand up or move away from the kitchen table, he would point the gun toward her.
>
> The defendant began making negative comments concerning the victim's past sexual experiences with other partners. The victim's testimony, in part, specifically provided as follows: "I've never been so mentally challenged in my

---

[2]Rec. Doc. No. 3.

[3]St. Rec. Vol. 1 of 8, Indictment, 11/20/01.

life because one minute it was slashing out at me.  I'm a whore. I'm a slut. I'm this, I'm that, and then the next minute it was, 'I love you.  We can make this work out.  We can do this.'"  The victim further stated that the defendant, at one point, placed the gun to his own throat and she pleaded that he not kill himself.  The victim also testified that the defendant hit her several times when she did not "answer a question fast enough or tell him what he wanted to hear."  The victim, hoping it would persuade defendant to discontinue the violent acts, told the defendant that they would get back together and everything would be fine.

Ultimately, the defendant started pulling the victim toward the bedroom of the house.  According to the victim, the defendant repeatedly asked to "[c]ome lay down with me."  The victim told the defendant she had a headache, did not feel sexual, did not feel like making love to the defendant, and that she needed some time to calm down.  The defendant pulled the victim into the bedroom and said, "You are going to give it to me, bitch, or I am going to take it."  The defendant positioned the victim on the edge of the bed, pulled her pants off, and removed his own clothing.  The defendant remained standing and told the victim to perform oral sex.  The victim cried and told the defendant, "I can't do this."  All of the interior doors were open and the victim's son was in the nearby living room.  The victim stated that she tried to comply with the command but could not do so.

The victim further stated, "Then he lays me on the bed, and he proceeds to go there with me."  According to the victim, the defendant placed his gun on the bed when he entered the bedroom.  At some point, the victim asked the defendant to remove the gun from the room and he complied by placing the gun on the kitchen table.  The defendant returned to the bedroom after moving the gun.  Hoping to end the sexual advances, the victim complied with the defendant's commands for her to tell him she loved him.  However, the defendant was persistent and proceeded to have vaginal intercourse with the victim.  The victim told the defendant that he was hurting her and "eventually, he got off of me."  The defendant obtained some Vaseline from the bathroom and told the victim that he was going to have anal sexual intercourse with her.  For a reason unbeknownst to the victim, the defendant decided not to have anal sexual intercourse with the victim.  The defendant put his clothes on and placed the gun in his holster.  The defendant went outside of the home briefly, then came back inside and informed the victim that he had entered the home the night before when the victim was not there and damaged some of the victim's and her son's clothing.  The victim had spent the prior night at her mother's home and had not returned to her residence until the moment that the defendant approached her in the driveway.  According to the victim, the defendant also destroyed all of her houseplants.  The victim stated that she was angered by the destruction of the items but that she did not reveal her feelings to the defendant.  Instead, she told

> the defendant that it was okay. Shortly after apologizing for damaging the clothing and destroying the plants, the defendant left the home.
>
> Immediately upon the defendant's departure, the victim took a quick bath, grabbed her purse and her son, and went to the home of a friend, Darlene Conn. The victim stated that she was afraid to call the police because of defendant's status as a police officer and because the defendant had previously issued verbal threats to hurt her and her family. After being informed of the offenses that took place, the friend contacted the police.

State v. Basco, 885 So.2d 55 (La. App. 1st Cir. 2004) (Table); State Record Volume 3 of 8, Louisiana First Circuit Court of Appeal Opinion, 2003-KA-2175, pages 3-5, September 17, 2004.

On November 7, 2002, the State entered a nolle prosequi on count two, the battery charge, and amended the indictment to renumber the remaining counts.[4] Basco was tried by a jury on November 18 through 21, 2002.[5] On count one, he was found guilty of the lesser included offense of forcible rape and on count two, was found guilty of simple criminal damage to property in excess of $500.00. The jury found him not guilty on count three, unauthorized entry of an inhabited dwelling.

At a hearing on March 5, 2003, the state trial court denied Basco's motions for new trial and for post-verdict judgment of acquittal.[6] After waiver of legal delays, the

---

[4]St. Rec. Vol. 1 of 8, Minute Entry, 11/11/02 (dated corrected by hand to 11/7/02); St. Rec. Vol. 8 of 8, Motion Hearing Transcript, 11/7/02.

[5]St. Rec. Vol. 1 of 8, Trial Minutes, 11/18/02; Trial Minutes, 11/19/02; Trial Minutes, 11/20/02; Trial Minutes, 11/21/02; Jury Verdict, 11/21/02; St. Rec. Vol. 2 of 8, Trial Transcript, 11/18/02; Trial Transcript, 11/19/02; Trial Transcript, 11/20/02; Trial Transcript, 11/21/02.

[6]St. Rec. Vol. 1 of 8, Sentencing Minutes, 3/5/03; Motion for New Trial, 2/11/03; Motion for Post-Verdict Judgment of Acquittal, 2/11/03; Sentencing Transcript, 3/5/03.

court then sentenced Basco to serve ten (10) years in prison at hard labor for forcible rape, with the first two (2) years to be without benefit of parole, probation or suspension of sentence, and ordered that Basco comply with the sex offender registration laws as applicable.[7]  The court also sentenced him to serve a concurrent sentence of five (5) years in prison at hard labor on the criminal damage count.

On direct appeal to the Louisiana First Circuit, Basco's counsel asserted seven (7) errors:[8] (1) The state trial court erred in overruling the defense objection to the hearsay testimony of Darlene Conn. (2) The state trial court erred in sustaining the State's relevancy objection during cross-examination of Darlene Conn. (3) The state trial court erred in failing to instruct the jury to disregard the testimony of state's witness Dana Cole regarding Basco's request to see the results of his polygraph test. (4) The state trial court erred in restricting cross-examination of the victim concerning her prior sexual activity. (5) The state trial court erred in referring to S.L.S. as the victim in the presence of the jury. (6) The state trial court erred in allowing the State to present the testimony of defendant's ex-wife about mental and physical abuse by defendant and of threats he made to kill himself. (7) The state trial court erred in overruling the defense objection to

---

[7]Id.

[8]St. Rec. Vol. 3 of 5, Appeal Brief, 03-KA-2175, 2/13/04.

the State's amendment of the indictment after the close of evidence and before argument to the jury.

On September 17, 2004, the Louisiana First Circuit affirmed the convictions and the sentence on count one and vacated the sentence for count two.[9]  In doing so, the court found no merit in the claims and/or that Basco failed to lodge contemporaneous objections to other portions of the testimony challenged on appeal.  The court determined that the sentence imposed on count two, criminal damage to property, exceeded the statutory maximum of two years.  The court vacated that sentence and remanded only for resentencing on that count.

On April 18, 2006, Basco's counsel filed an application for post-conviction relief asserting three grounds:[10] (1) He was denied equal protection and a fair trial when jurors concealed information during voir dire, misbehaved during trial and deliberations and failed to follow the court's instructions. (2) The charges should not have been joined in the same indictment. (3) He was denied effective assistance of counsel when counsel failed to preserve certain issues for appeal and comply with his wishes regarding

---

[9]State v. Basco, 885 So.2d at 55; St. Rec. Vol. 3 of 8, 1st Cir. Opinion, 2003-KA-2175, 9/17/04.

[10]St. Rec. Vol. 3 of 8, Application for Post-Conviction Relief, 4/18/06.

6

presentation of evidence.  On August 11, 2006, Basco's counsel also filed a motion for resentencing on count two based on the appellate court's remand order.[11]

The court resentenced Basco on August 15, 2006, to serve a concurrent two-year prison sentence at hard labor on that count.[12]  His convictions became final 30 days later, on September 14, 2006, because he did not seek reconsideration of his sentence, file a notice of appeal or otherwise seek review of his original appeal in the Louisiana Supreme Court.  Butler v. Cain, 533 F.3d 314 (5th Cir. 2008) (citing Roberts v. Cockrell, 319 F.3d 690, 694-95 (5th Cir. 2003)) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process)); Burton v. Stewart, 549 U.S. 147 (2007) (in a criminal case, judgment includes conviction and sentence, therefore the AEDPA "limitations period did not begin until both his conviction and sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review,'" citing 28 U.S.C. § 2244(d)(1)(A)); Cousin v. Lensing, 310 F.3d 843, 845 (5th Cir.2002) (petitioner's guilty pleas became final at the end of the period for filing a notice of appeal under La. Code Crim. P. art. 914).[13]

---

[11]St. Rec. Vol. 3 of 8, Motion for Re-Sentencing, 8/11/06.

[12]St. Rec. Vol. 6 of 8, Resentencing Minutes, 8/15/06.

[13]Article 914 was amended by La. Acts 2003, No. 949, § 1 to provide 30 days for filing a notice of appeal.

On October 11, 2006, the state trial court rejected the State's previously filed exception of prematurity related to the application for post-conviction relief.[14]  Almost two years after receiving the State's substantive response and awaiting additional briefing,[15] the state trial court held a hearing on the application on October 13, 2008.[16]  More than 16 months later, on February 5, 2010, the state trial court denied Basco's application.[17]  The court held that the jury misconduct and improper joinder claims were procedurally barred from review under La. Code Crim. art. 930.4(B) and (C),[18] because the issues could have been raised on appeal or earlier.  The court also denied relief on the ineffective assistance of counsel claim as conclusory and because Basco failed factually to support the claims, noting that neither errorless counsel nor reliance on an unsuccessful strategy constitute ineffective assistance.[19]

---

[14]St. Rec. Vol. 3 of 8, Dilatory Exception of Prematurity, 7/14/06; Trial Court Order, 10/11/06.

[15]St. Rec. Vol. 3 of 8, State's Response, 11/27/06.

[16]St. Rec. Vol. 8 of 8, Post Conviction Hearing Transcript, 10/13/08.

[17]St. Rec. Vol. 3 of 8, Trial Court's Order, 2/5/10.

[18]I note that the state trial court referred to the statute in one section of its reasons as "LSA-C.Cr.P. Art. 930" and in another section as "LSA-C.Cr.P. Art. 930 B and C."  By its specific reference to the reasons for dismissal, I have discerned that the appropriate article in both instances in La. Code Crim. P. art. 930.4(B) and (C).

[19]The record also reflects that, on February 23, 2009, Basco filed a deficient motion for new trial based on the testimony at the post-conviction hearing.  St. Rec. Vol. 3 of 8, Motion for New Trial, 2/23/09.  It does not appear that the deficient motion was considered by the state court.

Basco thereafter sought untimely leave to file a writ application in the Louisiana First Circuit for review of the state trial court's order.[20]  On October 26, 2010, the Louisiana First Circuit granted Basco until December 29, 2010, to file his writ application seeking review of the state trial court's order denying his application for post-conviction relief.[21]  After he filed the writ application within the time allowed, the Louisiana First Circuit denied the application without stated reasons on April 13, 2011.[22]  Basco sought review in the Louisiana Supreme Court, and the court denied his application without stated reasons on February 10, 2012.[23]

II.   FEDERAL HABEAS PETITION

On September 7, 2012, the clerk of this court filed Basco's petition for federal habeas corpus relief in which he asserted three (3) grounds for relief:[24] (1) The state trial court erred in denying the juror misconduct claim asserted in his application for post-conviction relief. (2) The state trial court erred in denying his claim that the charges should not have been joined in the same indictment. (3) The state trial court erred in

---

[20]St. Rec. Vol. 3 of 8, Notice of Intent, 7/12/10; Trial Court Order, 7/14/10.

[21]St. Rec. Vol. 3 of 8, 1st Cir. Order, 2010-KW-1361, 10/26/10.  The State failed to provide a copy of this writ application.

[22]St. Rec. Vol. 3 of 8, 1st Cir. Order, 2010-KW-2362, 4/13/11; St. Rec. Vol. 5 of 8, 1st Cir. Writ Application, 2010-KW-2362, 12/28/10 (dated 12/24/10).

[23]State ex rel. Basco v. State, 80 So.3d 483 (La. 2012); St. Rec. Vol. 3 of 8, La. S. Ct. Order, 2011-KH-1022, 2/10/12; La. S. Ct. Letter, 2011-KH-1022, 2/10/12 (showing postmark 5/12/11).

[24]Rec. Doc. No. 3.

denying relief on his claims that he was denied effective assistance of counsel when his counsel failed to preserve certain issues for appeal and comply with his wishes regarding presentation of evidence.

The State filed an answer in opposition to Basco's petition arguing that the petition was untimely filed.[25]  After enrolling new counsel, the State also filed a motion to dismiss Basco's federal petition arguing that he is no longer in custody, rendering moot his federal habeas petition and depriving this court of subject matter jurisdiction over his petition.[26]  Basco filed an opposition to the motion to dismiss, arguing that the continuing restrictions placed on him as a registered sex offender maintain his "in custody" status[27] for jurisdictional purposes.

III.   <u>MOTION TO DISMISS</u>

The Rules Governing Section 2254 Cases permit motions in response to a habeas petition.  Rules Governing § 2254 Cases, Rule 4, Advisory Committee Notes (2004 Amendment) ("The amended rule reflects that the response to a habeas petition may be a motion.")   In addition, the Federal Rules of Civil Procedure apply to habeas proceedings "to the extent they are not inconsistent with any statutory provisions or [the

---

[25]Rec. Doc. No. 9.

[26]Rec. Doc. No. 19.

[27]Rec. Doc. No. 21.

Rules Governing § 2254 Cases]."  Rules Governing § 2254 Cases, Rule 11; Mayle v. Felix, 545 U.S. 644, 654 (2005).

Fed. R. Civ. P. 12(b)(1) addresses lack of subject matter jurisdiction.  In habeas cases, a motion to dismiss for lack of jurisdiction is the functional equivalent of a Rule 12(b)(1) motion in ordinary civil practice. See Purdy v. Bennett, 214 F. Supp.2d 348, 353 (S.D.N.Y. 2002) (applying Rule 12(b) standards to motion to dismiss authorized by court pursuant to Rule 4 of the Rules Governing § 2254 Cases).  Motions filed under Rule 12(b)(1)

> allow a party to challenge the subject matter jurisdiction of the district court to hear a case.  Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.
> The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist.

Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001) (citations omitted); accord Randall D. Wolcott, M.D., P.A. v. Sebelius, 635 F.3d 757, 762-63 (5th Cir. 2011); Johnson v. Aramco Servs. Co., 164 F. App'x 469, 470 (5th Cir. 2006).

"A Rule 12(b)(1) motion should be granted only if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction." Davis v. United States, 597 F.3d 646, 649 (5th Cir. 2009) (quotation omitted). "Given

the burden of proof on the party asserting jurisdiction, the plaintiff must submit evidence to prove, by a preponderance of the evidence, that the court does have jurisdiction based on the complaints and evidence." Smith v. Potter, 400 F. App'x 806, 809 (5th Cir. 2010) (citing Patterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981)).

A factual attack on subject matter jurisdiction, such as the one presented by the State's motion to dismiss, challenges the existence of jurisdiction by looking beyond the pleadings.  In reviewing a factual attack, the court may consider materials outside the pleadings. Tatum v. United States, No. 11-506, 2011 WL 3205279, at *1 (E.D. La. July 27, 2011) (Africk, J.) (citing Oaxaca v. Roscoe, 641 F.2d 386, 391 (5th Cir. 1981); Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981)), vacated on other grounds, 465 F. App'x 313 (5th Cir. 2012); McKinley ex rel. D.M. v. Astrue, No. 10-321, 2010 WL 2836140, at *1 (E.D. La. July 16, 2010) (Vance, J.) (citing Garcia v. Copenhaver, Bell & Assocs., 104 F.3d 1256, 1261 (11th Cir. 1997); Clark v. Tarrant County, 798 F.2d 736, 741 (5th Cir. 1986)).  If the court resolves disputed facts to decide whether it has subject matter jurisdiction, "no presumptive truthfulness attaches to the plaintiff's allegations." Montez v. Dep't of Navy, 392 F.3d 147, 149 (5th Cir. 2004); accord In re Nighthawk Oilfield Servs., Ltd., No. H-11-0079, 2011 WL 2940703, at *1 (S.D. Tex. July 18, 2011); Deschoolmeester v. Cartus Corp., No. 10-1538, 2011 WL 1312048, at *3 (E.D. La. Mar. 31, 2011) (Fallon, J.).

The basis of the State's motion to dismiss the federal habeas petition for lack of jurisdiction in this case is Basco's post-filing release from prison.  28 U.S.C. § 2241(d) "gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are 'in custody in violation of the Constitution or laws or treaties of the United States.'"  Maleng v. Cook, 490 U.S. 488, 490 (1989) (quoting 28 U.S.C. § 2241(c)(3)) (emphasis added); 28 U.S.C. § 2254(a).  Thus, to be eligible for federal habeas corpus relief, a petitioner must be "in custody" and must have exhausted his available state court remedies.  Carty v. Thaler, 583 F.3d 244, 253 (5th Cir. 2009); Dickerson v. Louisiana, 816 F.2d 220, 224 (5th Cir. 1987).  The United States Supreme Court has interpreted this statutory language to require that the habeas petitioner be in custody at the time the petition is filed for the conviction or sentence under attack.  Lackawanna County Dist. Attorney v. Coss, 532 U.S. 394, 400-401 (2001).   In Lackawanna, the Supreme Court recognized a single exception to this rule relating to Sixth Amendment claims of failure to appoint counsel.  No such claim is made in this case.[28]

---

[28]As explained by the Sixth Circuit in Abdus-Samad v. Bell, 420 F.3d 614, 630 (6th Cir. 2005), a three-justice plurality of the Lackawanna Court speculated that other exceptions to this rule of federal habeas non-reviewability might exist in other circumstances, including (1) where a state court, without justification, has refused to rule on a properly presented constitutional claim, and (2) where a defendant subsequently obtains compelling evidence of his actual innocence.  Neither of these circumstances exist in this case.

Contrary to the State's assertion, however, once the jurisdictional prerequisite of custody is met <u>at the time of filing</u>, it is not lost, and jurisdiction is <u>not</u> defeated, merely by the petitioner's <u>subsequent</u> release from custody.  <u>Carafas v. LaVallee</u>, 391 U.S. 234, 238 (1968); <u>Port v. Heard</u>, 764 F.2d 423, 425 (5th Cir. 1985).  In this case, there is no question that Basco was incarcerated, <u>i.e.</u>, in custody, on the date he filed this federal petition for habeas corpus relief.  The custody requirement was clearly met in this case at the time of filing.  The fact that Basco was subsequently released from prison does not necessarily divest this court of jurisdiction over his federal petition.[29]

The Supreme Court, however, has recognized that, although jurisdiction is not defeated, an <u>un</u>conditional release from prison can render a federal habeas petition moot. <u>Spencer v. Kemna</u>, 523 U.S. 1, 7 (1998).  To avoid mootness, the released petitioner must show "some concrete and continuing injury other than the now-ended incarceration." <u>Id</u>. If the petitioner is attacking the validity of the criminal conviction itself, and not just the sentence, the court may presume continuing collateral consequences, even if they may be remote and unlikely to occur.  <u>Id</u>. at 7-8; <u>Maleng</u>, 490 U.S. at 491-92 (citing <u>Carafas</u>, 391 U.S. at 237 (a convicted felon's inability to vote in a state election or serve as a juror, among other collateral consequences, would prevent a federal habeas challenge from being moot)).

---

[29]Rec. Doc. Nos. 3 (petition at caption p.1 and signature p. 14) and 14 (notice of release after filing).

14

Basco asserts that his petition is not moot and he continues to be required to register as a sex offender under Louisiana law and live within the restrictions imposed by that law.  La. Rev. Stat. §15:542 et seq.  Basco is clearly subject to the sex offender registration rule, which was also pronounced as a requirement at his sentencing.

The classification, registration and community-notification requirements of a state's sex offender statute have been recognized as continuing collateral consequences of a conviction sufficient to defeat mootness where the state law sufficiently restrains the offender's freedom and liberty.  See United States v. Juvenile Male, __ U.S. __, 130 S. Ct. 2518, 2519 (2010) (recognizing federal sex offender registration law as a continuing collateral consequence in mootness consideration); United States v. Juvenile Male, 670 F.3d 999, 1005-07 (9th Cir. 2012), cert. denied, 133 S. Ct. 234 (2012) (criminal appeal not moot where offenders were still subject to sex offender registration requirements); Fowler v. Sacremento County Sheriff's Dept., 421 F.3d 1027, 1033 n.5 (9th Cir. 2005) (addressing California's sex offender law); Leslie v. Randle, 296 F.3d 518, 523 (6th Cir. 2002) (addressing Ohio's sex offender law).

My research has located no United States Fifth Circuit decision addressing whether Louisiana's sex offender registration law is sufficient to avoid mootness.  In other circumstances, however, the Louisiana sex offender registration requirement has been recognized as an on-going collateral consequence of conviction. See Lawrence v.

15

Texas, 539 U.S. 558, 581 (2003) (O'Connor concurring) (using Louisiana's sex offender registration law as an example of a continuing collateral consequence); Doe v. Jindal, 851 F. Supp.2d 995 (E.D. La. 2012) (convicted sex offenders have standing to challenge Louisiana's sex offender registration statute under the Equal Protection Clause because the requirements of and compliance with the law demonstrated "actual, concrete and particularized injury.")

Under these circumstances, I find that Basco has stated a justiciable claim and continues to do so even after his release, such that his petition is not moot and survives this motion to dismiss. The custody requirement was met at the time he filed his petition, and his subsequent release alone is not sufficient to render his petition moot. Therefore, I recommend that the State's motion to dismiss, Rec. Doc. No. 19, be denied.

IV.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[30] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore

---

[30]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

applies to Basco's petition, which, for reasons discussed below, is deemed filed in this court on July 31, 2012.[31]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b), (c)).

In its original response, the State argued that Basco's petition was not timely filed. However, the State's timeliness calculation fails to recognize that Basco submitted a writ application in the Louisiana Supreme Court on May 12, 2011, for which he is entitled to significant tolling under the AEDPA. In asserting its time bar defense, the State erroneously failed to consider or calculate the tolling due Basco for that filing at all. 28 U.S.C. § 2244(d)(2).

---

[31]The United States Court of Appeals for the Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Basco's petition was filed by the clerk of court on September 7, 2012, when the filing fee was received. Basco dated his signature on the form petition on July 31, 2012. This is the earliest date appearing in the record on which he could have delivered the petition and its attachments to prison officials for mailing. The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843, 843 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

The AEDPA requires a petitioner to bring his Section 2254 petition in most cases within one year of the date his conviction became final.[32]  <u>Duncan v. Walker</u>, 533 U.S. 167, 179-80 (2001).  The AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a <u>properly filed application for State post-conviction or other collateral review</u> with respect to the pertinent judgment or claim is pending <u>shall not be counted</u> toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2) (emphasis added).  By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. <u>Flanagan</u>, 154 F.3d at 199 n.1.  The Supreme Court has clearly described this provision as a tolling statute.  <u>Duncan</u>, 533 U.S. at 175-178.

---

[32]The statute of limitations provision of the AEDPA at 28 U.S.C. § 2244(d), provides for other triggers which do not apply here:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--

A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or

D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

18

The decisions of the Fifth Circuit and other federal courts have held that because Section 2244(d)(2) is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period. Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F. Supp.2d 771, 771-72 (D. Md. 1998). Under these standards, Basco is entitled to tolling of the AEDPA statute of limitations period during the pendency of his timely filed 2011 Louisiana Supreme Court writ application.

I find that Basco's federal petition was timely filed, and I cannot accept the State's limitations defense in light of the record establishing the timeliness of his federal petition when the AEDPA statute of limitations tolling provisions are properly applied. Accordingly, Basco's claims are not time barred and must be addressed, including the fact that two of his three claims were procedurally barred by the state courts.

## V.      PROCEDURAL DEFAULT (CLAIMS NOS. 1 & 2)

Basco asserts claims of juror misconduct and misjoinder of the offenses charged in his indictment.  As outlined above, on February 5, 2010, the state trial court found these claims procedurally barred from review pursuant to La. Code Crim. P. 930.4(B) and/or (C) for failure to raise them at trial, post-trial or on appeal.  This was the last reasoned decision on the issue by a state court.  Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).  For the following reasons, these two claims are procedurally barred and may not be addressed by this court.

The United States Fifth Circuit Court of Appeals has stressed that a federal habeas court must determine as a threshold matter whether procedural default has occurred on any asserted claim.  Nobles, 127 F.3d at 420.  This court has discretion to raise procedural default sua sponte, provided that the petitioner has notice that the issue is being considered.  Fisher v. Texas, 169 F.3d 295, 301 (5th Cir. 1999); Magouirk v. Phillips, 144 F.3d 348, 358 (5th Cir. 1998).

Accordingly, **petitioner is hereby specifically instructed that this report and recommendation is notice to him that this court is sua sponte raising the issue of procedural default and that petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this report**.  Magouirk, 144 F.3d at 348.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment. Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir. 1995) (citing Harris v. Reed, 489 U.S. 255, 260, 262 (1989)). This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review. Amos, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. Harris, 489 U.S. at 263; Glover, 128 F.3d at 902. In this case, the last reasoned decision of the state trial court relied upon on La. Code Crim. P. art. 930.4(B) and (C) to dismiss Basco's juror misconduct and misjoinder of offenses claims.

A.    INDEPENDENT AND ADEQUATE

For the state law procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate. A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. Amos, 61 F.3d at 338. The United States

21

Fifth Circuit has held that "[a] state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim."   Fisher v. Texas, 169 F.3d 295, 300 (5th Cir. 1999).   To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  Walker v. Martin, __U.S.__, 131 S.Ct. 1120, 1127 (2011); Glover, 128 F.3d at 902.  A state procedural rule "can be 'firmly established' and 'regularly followed,' - even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." Beard v. Kindler, 558 U.S. 53, __, 130 S. Ct. 612, 618 (2009).  The question of the adequacy of a state procedural bar is itself a federal question.  Beard, 130 S.Ct. at 617 (citing Lee v. Kemna, 534 U.S. 362, 375 (2002)).

La. Code Crim. P. art. 930.4(B) and (C) are clearly independent state law procedural grounds for denying review of an improperly raised post-conviction claim. Bennett v. Whitley, 41 F.3d 1581 (5th Cir. 1994) (Article 930.4 is independent and adequate basis to federal review); Thomas v. Cain, No. 11-2103, 2012 WL 1885088, at *4 (E.D. La. May 23, 2012) (Lemelle, J.) (same); Washington v. Cain, No. 98-0584, 2000 WL 863980, at *4 (E.D. La. June 27, 2000) (Duplantier, J.) (same).  These state procedural bars are presumptively adequate when the state court expressly and regularly

relies on them in deciding not to review a claim for collateral relief.  <u>Glover</u>, 128 F.3d at 902.  This is true in Basco's case.

The state court in this case expressly ruled that Basco was not entitled to relief on these claims, because they were known to the defense and were not raised in the trial court or on appeal.  I find that the state law bars imposed under La. Code Crim. P. art. 930.4(B) and (C) are both independent and adequate to bar review of the merits of Basco's jury misconduct and improper joinder issues in this federal habeas case.

B.    <u>CAUSE AND PREJUDICE</u>

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice."  <u>Glover</u>, 128 F.3d at 902 (citing <u>Coleman</u>, 501 U.S. at 731-32); <u>Amos</u>, 61 F.3d at 338-39 (citing <u>Harris</u>, 489 U.S. at 262; <u>Engle v. Isaac</u>, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule.  <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986).  The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed

to raise the claim despite recognizing it, does not constitute cause for a procedural default.  Id., at 486.

In this case, Basco has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana courts.  My review of the record does not support a finding that any factor external to the defense prevented Basco from raising these claims in a procedurally proper manner.  As discussed below, I have also reviewed his ineffective assistance of counsel claim and find it to be without merit, thereby providing no cause for the default arising from that component of his case.  The record reflects no action or inaction by the State which prevented Basco from properly asserting these claims in the state courts.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown."  Hogue v. Johnson, 131 F.3d 466, 497 (5th Cir. 1997) (citing Engle, 456 U.S. at 134 n.43).  Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice.  Ratcliff v. Estelle, 597 F.2d 474 (5th Cir. 1979) (citing Lumpkin v. Ricketts, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Basco's juror misconduct and misjoinder of offenses claims are therefore procedurally barred from review by this federal habeas corpus court.  See Trest v. Whitley, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner

neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), <u>vacated on other grounds</u>, 522 U.S. 87 (1998).[33]

C.    <u>FUNDAMENTAL MISCARRIAGE OF JUSTICE</u>

Basco may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed.  <u>Hogue</u>, 131 F.3d at 497 (citing <u>Sawyer v. Whitley</u>, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence."  <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 454 (1986); <u>accord</u> <u>Murray</u>, 477 U.S. at 496; <u>Glover</u>, 128 F.3d at 902.  To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.  <u>Campos v. Johnson</u>, 958 F. Supp. 1180, 1195 (W.D. Tx. 1997) (footnote omitted); <u>Nobles</u>, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.") When the petitioner has not adequately asserted his actual innocence, his procedural

---

[33]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not <u>required</u> to raise the procedural default argument sua sponte. <u>Id</u>.

default cannot be excused under the "fundamental miscarriage of justice" exception. <u>Glover</u>, 128 F.3d at 903.

Basco provides no indication and the record contains nothing that suggests his actual innocence on the underlying conviction. He fails to present any evidence or argument of factual innocence to contravene his conviction. For these reasons, Basco has failed to overcome the procedural bar, and his juror misconduct and misjoinder of offenses claims must be dismissed with prejudice for that reason.

VI.   <u>STANDARDS OF MERITS REVIEW OF THE REMAINING CLAIM</u>

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  <u>Nobles</u>, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), <u>cert. denied</u>, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93; Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is

objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25);

Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

VII.   INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NO. 3)

Basco alleges that he was denied effective assistance of counsel when his trial

counsel failed to present certain evidence, make contemporaneous objections,  have the

jury polled after the verdict and have the simple criminal damage and unauthorized entry

charges severed from the rape count.

In addressing Basco's claim of ineffective assistance of counsel on post-conviction

review in a post-conviction hearing and after allowing ample opportunity for additional

briefing, the state trial court found that Basco's claims were unsupported, conclusory and

lacked specificity.  The court concluded that Basco had failed to prove his entitlement

to relief under La. Code Crim. P. art. 926(B)(3).  The court also referenced the State's

recitation in its response of "the correct law" to be applied; specifically, the standards in

Strickland v. Washington, 466 U.S. 668 (1984) and related state law.  The state court

then noted that errorless counsel and the failure to employ a more successful defense do

28

not constitute ineffective assistance of counsel. This was the last reasoned decision of the state courts on this issue.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Clark v. Thaler, 673 F.3d 410, 416 (5th Cir. 2012); Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010). Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

As noted by the state trial court, the standard for judging performance of counsel was established by the United States Supreme Court in Strickland, in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. Strickland, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d

at 893.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 792 (2011) (Strickland requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance."  Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689-90).  In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial.  Strickland, 466 U.S. at 689; Neal v. Puckett, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001).

On habeas review, the United States Supreme Court has recently clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to

incompetence under prevailing professional norms,  not whether it deviated from best practices or most common custom." Harrington, 131 S.Ct. at 788.  The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so.  The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 131 S. Ct. at 788.

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." Cullen, 131 S. Ct. at 1403 (quoting Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)). This court must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690.  Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance.  Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector, 120 F.3d at 564) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).  Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.  Strickland,

466 U.S. at 689; Moore, 194 F.3d at 591.  The burden is on petitioner to demonstrate that counsel's strategy was constitutionally deficient.  Id.

Basco contends that he was denied effective assistance of counsel when his trial counsel failed to present certain evidence, including a videotape of the victim demanding "rough sex" from the petitioner.  Basco has not provided any argument here or in the state courts, nor did he present any testimony at the state post-conviction hearing, describing this tape in any detail, establishing its specific content or indicating what impact the tape might have had on the verdict.

For purposes of review under Strickland, Basco has not argued or established that the alleged videotape would have been relevant and admissible had counsel attempted to introduce it.  Under Louisiana law, "specific instances of the victim's past sexual behavior is . . . not admissible except for . . . [e]vidence of past sexual behavior with the accused offered by the accused upon the issue of whether or not the victim consented to the sexually assaultive behavior."  La. Code Evid. art. 412(B)(2).  The request to use such evidence must be made by pretrial motion filed within 15 days of the accused's arraignment, unless otherwise ordered by the court after a determination that it was impossible for the accused timely to file the motion through no fault of his own.  La. Code Evid. arts. 412(D), 521; State v. Davis, 640 So.2d 500 (La. App. 3rd Cir. 1994).

Basco, like his state post-conviction counsel, indicates that he asked his counsel "during trial" to introduce the tape.[34]  Under Louisiana law, a request at trial to introduce such evidence would have been untimely.  See State v. K.W.T., No. 11-839/11-1374, 2012 WL 1694582, at *7 (La. App. 3rd Cir. 2012).  Counsel's failure upon his client's request "during trial" to urge an untimely motion or to attempt to present evidence not properly preserved for trial was not unreasonable or deficient.

The record reflects that defense counsel attempted at trial to delve into the victim's past sexual behavior, arguing that the State had opened the door to such questioning during her direct examination.  Counsel's efforts were met with objection.  While the trial court allowed certain questions, the court restricted cross-examination about the victim's number of sexual partners and other areas of her sexual past.  Faced with that ruling, it was within counsel's sound discretion not to attempt to introduce a videotape (by untimely motion) related to her past sexual behavior, even if it was with Basco.  The state trial court's evidentiary ruling was challenged by Basco on direct appeal.  The Louisiana First Circuit determined that the claim was meritless, finding no error, or at most harmless error, in the ruling.  In light of that record, including the untimeliness of Basco's request and the rulings already issued by the state trial court, it cannot be concluded that counsel acted unreasonably in failing to introduce the tape.

---

[34]Rec. Doc. No. 3, p. 22 (memorandum in support at p. 8); St. Rec. Vol. 3 of 8, Application for Post-Conviction Relief, pp. 4-5, 4/18/06.

Basco also has not established that introduction of the tape would have altered the outcome of the trial.  The jury heard testimony from the victim regarding her past, including the fact that she dropped out of high school and had a history of illegal drug and alcohol use.[35]  She also explained that she met Basco at a bar, shortly after getting a DWI citation and while she was involved with another man.[36]  She also testified that she smoked a marijuana cigarette in front of Basco the night she met him and that he spent the night at her home the first night they met.[37]  She acknowledged that she and Basco had a good sex life during their five or six months together, including at least one occasion of anal sex, and that he never forced himself on her before this time.[38]  She also mentioned that Basco once left her at a wedding reception, because he learned that she had slept with the groom in the past.  She indicated that Basco generally did not like being where there were people with whom she had slept.[39]  She also testified that she had never been married, although she had a young son by another man.[40]

---

[35]St. Rec. Vol. 2 of 8, Trial Transcript, pp. 35, 37-39, 98, 11/20/02.

[36]Id., p. 39, 41.

[37]Id., pp. 39-41.

[38]Id., p. 139.

[39]Id., p. 51.

[40]Id., p. 98, 102.

The jury had before it information indicating that the victim had an active sex life with Basco and well before meeting him.  The jury nevertheless found that on the occasion at issue, the victim said "no" to Basco's advances and was raped.  Basco has not demonstrated that counsel's failure to show a videotape of some of her other sexual activity with Basco made any difference in the jury's assessment of the victim, her credibility or in the outcome of the case.

Basco also argues generally that his counsel was ineffective when he failed to preserve issues for appellate review and make contemporaneous objections at trial.  As in the state trial court, Basco has not identified to this court any specific issue or objectionable point overlooked by counsel.  Instead, Basco generally and vaguely references unspecified issues addressed by the Louisiana First Circuit on direct appeal that were considered waived or not preserved for appeal.  In addressing this conclusory argument on post-conviction review, the state trial court noted that Basco had overlooked the fact that the appellate court also addressed the five "waived" evidentiary errors on the merits.[41]

As recited above, counsel asserted seven issues on direct appeal: [42] (1) The state trial court erred in overruling the defense objection to the hearsay testimony of Darlene

_____

[41]St. Rec. Vol. 3 of 8, Trial Court Order, pp. 6-7, 2/5/10.

[42]St. Rec. Vol. 3 of 5, Appeal Brief, 03-KA-2175, 2/13/04.

Conn. (2) The state trial court erred in sustaining the State's relevance objection during cross-examination of Darlene Conn. (3) The state trial court erred in failing to instruct the jury to disregard the testimony of state's witness Dana Cole regarding Basco's request to see the results of his polygraph test. (4) The state trial court erred in restricting cross-examination of the victim with respect to her prior sexual activity. (5) The state trial court erred in referring to S.L.S. as the victim in the presence of the jury. (6) The state trial court erred in allowing the State to present the testimony of the defendant's ex-wife about Basco's mental and physical abuse and his threats to kill himself. (7) The state trial court erred in overruling the defendant's objection to the State's amendment to the indictment after the close of evidence and before argument to the jury.  Of these errors, the second and seventh errors were found to be meritless.

In connection with the first error, Basco argued that Conn's testimony recounting the events described to her by the victim and the victim's statement that Basco would kill her and her family and friends if she reported the incident was impermissible hearsay. The court found that the victim's complaint made to Conn about the physical and sexual attack was not hearsay and was admissible.  As for the balance of the challenge to Conn's testimony, the court found that it was not preserved for appellate review by a contemporaneous objection.  The court, nevertheless, found that Conn's testimony was

cumulative and corroborative of the victim's testimony, making its admission harmless error.

In addressing the third error, the Louisiana First Circuit found that it was not preserved for appeal because Basco did not object to Officer Coleman's reference to the polygraph test. The court also found that Basco did "not argue that the vague, brief comment created prejudice in the mind of the jury," and deemed the issue meritless.

As to the fourth claim of limited cross-examination of the victim's sexual history, the court found the claim meritless. The court found that the state trial court actually overruled the State's objection to Basco's question to the victim about the identity of her son's father and she was allowed to answer the question. In doing so, the state trial court also indicated that it would not allow Basco to question her about prior sexual partners and other areas. The Louisiana First Circuit noted that counsel did not specifically object to the trial court's cautionary comment which led to the limitation of the cross-examination. The court went on to address the claim on the merits and found that Basco's Confrontation Clause rights were not violated by the trial court's ruling.

Basco argued in the fifth claim that the trial court erred in referring to S.L.S. as "the victim" in front of the jury, depriving him of the presumption of innocence. The Louisiana First Circuit specifically found this claim meritless because the remark did not

influence the jury or contribute to the verdict.  The court also noted that counsel failed contemporaneously to object to the trial court's comment.

Basco's sixth claim challenged the State's introduction of the testimony of Basco's ex-wife regarding mental and physical abuse by Basco, testimony which had been excluded upon pretrial motion.  The Louisiana First Circuit found that Basco did not object to the testimony at the time to preserve the issue for appeal and noted that defense counsel went on to cross-examine the ex-wife on the very testimony about which he was complaining.

Based on the foregoing, it appears that trial counsel did not enter contemporaneous objections to five of evidentiary errors raised on appeal.  Nevertheless, counsel's failure to do so did not amount to prejudice in the constitutional sense.  The Louisiana First Circuit actually addressed the substantive merits of four of the five claims and found each without merit.  As to these four claims, Basco effectively received appellate review despite the lack of contemporaneous objection.

As for the last claim, regarding the ex-wife's testimony, the record reflects that the state trial court denied the State's motion to use the testimony of both of Basco's ex-wives in its <u>case-in-chief</u>.[43]  At the final hearing on that motion, the State clarified and the court affirmed that the ruling was directed only at the case-in-chief.  The testimony

---

[43]St. Rec. Vol. 1 of 8, Minute Entry, 11/11/02 (11/7/02 handwritten above); St. Rec. Vol. 8 of 8, Motion Hearing Transcript, p. 41, 11/7/02.

at issue was the ex-wife's testimony during the State's rebuttal.[44]  The state trial court's

order did not prohibit this testimony on rebuttal.  Counsel was not obliged to enter an

objection to its presentation since it was not contrary to the state trial court's prior ruling.

See Clark v. Thaler, 673 F.3d 410, 429 (5th Cir. 2012), cert. denied, 133 S. Ct. 179

(2012) ("failure to assert a meritless objection cannot be grounds for a finding of

deficient performance") (quoting Emery v. Johnson, 139 F.3d 191, 198 (5th Cir. 1997);

Wood v. Quarterman, 503 F.3d 408, 413 (5th Cir. 2007) ("'[f]ailure to raise meritless

objections is not ineffective lawyering; it is the very opposite.'") (quoting Clark v.

Collins, 19 F.3d 959, 966 (5th Cir. 1994)); Green v. Johnson, 160 F.3d 1029, 1037 (5th

Cir. 1998) (failure to make a frivolous objection is not deficient performance below an

objective level of reasonableness).  As noted by the state appellate court, trial counsel

was able thoroughly to cross-examine the ex-wife in an effort to minimize the impact of

her testimony.  Based on this record, Basco has not demonstrated that counsel's failure

to object to the ex-wife's rebuttal testimony was deficient performance or prejudicial to

the defense.

Basco also alleges that his counsel was ineffective when he failed to have the jury

polled after the verdict.  Louisiana law allows – but does not require – counsel to request

that a jury be polled.  La. Code Crim. P. art. 812.  Without some indication in the record

---

[44]St. Rec. Vol. 2 of 8, Trial Transcript, p. 254, 11/20/02.

that the jury's verdict was not proper, counsel was not remiss in failing to have the jury polled.  United States v. Ambo, 64 Fed. App'x 416, 2003 WL 1524540, at *3 (5th Cir. Mar. 10, 2003); see United States v. Costa, 691 F.2d 1358, 1363-64 (11th Cir. 1982) ("Since there is nothing in the record to indicate any juror was uncertain of the verdict, counsel's failure to request a poll does not fall outside the range of competence expected of attorneys in criminal cases.").  The record shows that the court questioned the foreman about the verdict form and his signature to assure its accuracy.[45]  The record contains nothing to indicate an error in the verdict or that counsel should have been prompted by any peculiarity in the verdict to request a polling.  Counsel's exercise of discretion on this issue was not unreasonable, prejudicial or constitutionally deficient representation.

Basco also complains that his counsel failed to have the simple criminal damage and unauthorized entry charges severed from the rape count for trial.  Considering his claims as a whole, he apparently bases this argument on the assertion that joint trial of the charges allowed the jury to hear other crimes evidence, which caused confusion and impacted the verdict.  Basco raised this issue in his state application for post-conviction relief separately and apart from his ineffective assistance of counsel claim.  The state trial court concluded that trial counsel did not err or prejudice the defense, because Louisiana law clearly permitted the charges to be tried together.  The court referred to the claim as

---

[45]St. Rec. Vol. 2 of 8, Trial Transcript, pp. 103-05, 11/21/02.

"one further example of the distortion and incorrect statements of law" presented throughout Basco's post-conviction application. Basco's identical argument to this court is also legally incorrect and demonstrates no deficiency in his trial counsel's performance.

Under Louisiana law, ". . . the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute." La. Code Crim. P. art. 61. The prosecutor's decision appropriately to join criminal charges in a bill of information is not subject to objection by the defense. See State v. Brooks, 541 So.2d 801 (La. 1989) (citing La. Code Crim. P. art. 61 as providing broad discretion to the district attorney in determining whether to sever counts in an indictment); State v. Burnett, No. 2007-KA-2523, 2008 WL 2064975, at *3-4 (La. App. 1st Cir. 2008) (unpublished) (district attorney has discretion to prosecute offenses separately or in aggregate) (citing State v. Joles, 492 So.2d 490 (La. 1986)) (addressing joinder of theft counts).

Louisiana law provides for joinder of criminal acts in one bill of information or indictment under certain circumstances:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme

41

or plan; provided that the offenses joined must be triable by the same mode
of trial.

La. Code Crim. P. art. 493.

In addition, as cited by the state trial court, La. Code Crim. P. art. 493.2 permits
joinder where "offenses in which punishment is necessarily confinement at hard labor
may be charged in the same indictment or information with offenses in which the
punishment may be confinement at hard labor, provided that the joined offenses are of
the same or similar character or are based on the same act or transaction or on two or
more acts or transactions connected together or constituting parts of a common scheme
or plan."  La. Code Crim. P. art. 495.1, however, provides that "[i]f it appears that a
defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of
information or by such joinder for trial together, the court may order separate trials, grant
a severance of offenses, or provide whatever other relief justice requires."

In Basco's case, the facts established at trial clearly indicate that the offenses for
which he was charged occurred during his assault of the victim during the course of
several hours.  The state trial court ruled that the charges were properly joined in the
indictment under La. Code Crim. P. art. 493.2.

The record also demonstrates that there was no prejudice that might have
prompted counsel to move or the court to sever under La. Code Crim. P. art. 495.1.
Under Louisiana law, "there is no prejudice and severance is not required if the facts of

42

each offense are not complex, and there is little likelihood the jury will be confused by the evidence of more than one crime." State v. Lewis, 557 So.2d 980, 984 (La. App. 4th Cir. 1990).  The trial transcript establishes that the evidence of each event and each crime was presented in a clear sequence to the jury.  Contrary to Basco's conclusory argument, the record demonstrates that the events occurred as a common and continuing occurrence, and the record reflects no confusion on the part of the jury, all as reflected by the jury's overall verdict finding Basco not guilty of the unauthorized entry charge. In addition, the jury did not find Basco guilty of aggravated rape, as charged, but of the lesser offense of forcible rape.  These distinctive verdicts demonstrate that the jury was able to compartmentalize the evidence and assess each count independently.

State law did not require that the counts be severed and tried separately as a matter of law.  Basco was charged with three felonies in the amended indictment.  A felony, under Louisiana law, "is any crime for which the offender may be sentenced to death or imprisonment at hard labor."  La. Rev. Stat. § 14:2.  Felonies necessarily punished by confinement at hard labor are to be tried by a twelve-person jury.  La. Code Crim. P. art. 782.  Other felonies which may be punished by confinement at hard labor are to be tried by a jury of six.  Id.  The non-capital aggravated rape charge in the indictment was punishable by confinement at hard labor.  La. Rev. Stat. § 14:42(D)(1).  The criminal damage to property charge and the unauthorized entry counts were each punishable by

fine and/or confinement with or without hard labor.  La. Rev. Stat. § 14:56(B)(2); La. Rev. Stat. § 14:62.3(B).  While each was a felony, the hard labor option made them triable by different modes.

Nevertheless, under La. Code Crim. P. art. 493.2, relied on by the state trial court, when such felonies are joined in one indictment, they are to be tried by a twelve-person jury, ten of whom must agree on the verdict.  State v. Woods, 4 So.3d 248, 252 (La. App. 5th Cir. 2009); State v. Young, 943 So.2d 1118, 1123 (La. App. 1st Cir. 2006).  Basco was tried by a twelve-person jury.  Thus, under Louisiana law, the charges were properly brought in the same indictment and properly presented to the same jury.  Louisiana law did not require severance and instead allowed for their joinder in the same indictment.

Having reviewed the record in its entirety, I find that Basco was not prejudiced simply because the offenses were tried together, and his counsel was not ineffective in failing to have them severed.  The facts of the offenses were not complex or confusing and were tied together through the common thread of Basco's activities.  There was no showing of prejudice that would have warranted or required counsel to move for severance under Louisiana law.

Basco has not identified any error in the joinder of the charges against him that would have warranted objection by his counsel.  Counsel's decision not to make a meritless objection or file a frivolous motion was not unreasonable.  Clark, 673 F.3d at

44

429.  Basco has not demonstrated an error in counsel's performance or any prejudice arising from his representation.

Having addressed each of Basco's grounds in support of his ineffective assistance of counsel claim, I find that he has failed to establish deficient performance or prejudicial act on the part of his trial counsel under the standards set forth in <u>Strickland</u>.  The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of, federal law.  Basco is not entitled to relief on this claim.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that the State's motion to dismiss, Rec. Doc. No. 19, be **DENIED**.

It is further **RECOMMENDED** that Randall Steven Basco's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v.</u>

45

<u>United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[46]

New Orleans, Louisiana, this ____14th____ day of March, 2013.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[46]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.